**A. TARRICONE, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 97 CIV. 3101(BDP).**

United States District Court,
S.D. New York.

May 20, 1998.

Donal A. Meyers, Mt. Kisco, NY, for Plaintiff.

Amy Benjamin, Asst. U.S. Atty., United States Attorney's Office, New York City, for Defendant.

## MEMORANDUM DECISION AND OPINION

PARKER, District Judge.

Plaintiff A. Tarricone, Inc. ("Tarricone"), who owns and operates a gasoline terminal in Yonkers, New York, and distributes gasoline to retail stations, has sued the United States, pursuant to 26 U.S.C. § 7427 and 28 U.S.C. § 1346(a)(1), seeking a refund of gasoline excise taxes on the grounds that the statutes on which the taxes were levied are unconsti-

tutionally retroactive. The United States has counterclaimed, seeking the payment of Tarricone's outstanding balance of $1,290,-171.44 in excise tax liability, and has moved for judgment on the pleadings under Fed. R.Civ.P. 12(c). For the reasons stated below, the government's motion is granted.

## BACKGROUND

The tax liability that is the subject of this litigation arises from changes to the Internal Revenue Code and Regulations that were made in response to the perceptions of the IRS and Congress that substantial evasion of gasoline excise taxes was occurring. *See Janus Petroleum Co., Inc. v. United States*, 915 F.Supp. 556 (E.D.N.Y.1996).

Under the Tax Reform Act of 1986 ("1986 Act"), Congress provided that the gasoline excise tax would be imposed at the earlier of the removal of the gasoline from a terminal or its sale by a refiner, importer, or terminal operator. *See* 26 U.S.C.A. § 4081(a) (West 1989) (before 1990 amendment).[1] The statute did not specifically identify, however, who would be liable for payment of the tax. In 1987, the IRS published proposed regulations implementing the 1986 Act. *See* 52 Fed.Reg. 44141 *et seq.* Under those proposed regulations, a registered person owning the gasoline at the time that the excise tax applied was liable for the tax. A "registered" person is an entity whose participation in the wholesale or retail gasoline market is made known to the Federal Government through the filing of a Certificate of Registry (Form 637) with the IRS. *See* 26 C.F.R. § 48.4101–1. If an unregistered person removed gasoline from a terminal, the terminal operator would be liable for the excise tax. The 1987 proposed regulations were never issued in final form.

Effective July 1, 1991, Congress amended the 1986 Act ("1990 Act"), increasing the number of points at which the tax could be imposed. The applicable portion of the 1990 Act provided:

There is hereby imposed a tax … on … (i) the removal of a taxable fuel from any

---

1. This provision provides: "There is hereby imposed a tax … on the earlier of—(A) the removal, or (B) the sale, of gasoline by the refiner or importer thereof or the terminal operator." 26 U.S.C. § 4081(a).

refinery, (ii) the removal of a taxable fuel from any terminal, (iii) the entry into the United States of any taxable fuel for consumption, use, or warehousing, and (iv) the sale of a taxable fuel to any person who is not registered . . . unless there was a prior taxable removal or entry of such fuel under clause (i), (ii), or (iii).

26 U.S.C. § 4081(a). In August 1991, the IRS published proposed regulations implementing the 1990 Act, with a proposed effective date of January 1, 1992 ("1991 proposed regulations"). 56 Fed.Reg. 42287 *et seq.*

Under the 1991 proposed regulations, the entity contracting with the terminal operator for the use of the gasoline storage facilities ("position holder") would be liable for the tax imposed on the gasoline at its removal from the storage facilities. *Id.* at 42289. The regulations also provided that the terminal operator was jointly and severally liable for the tax if the position holder was not registered. *Id.*

Because of the six-month gap between the effective date of the 1990 Act and the proposed regulations that implemented it, Congress provided that liability for the excise tax would be determined "under existing administrative guidance" from July 1, 1991 through December 31, 1991. That "guidance" included the 1987 proposed regulations that were never formally implemented.

The 1991 proposed regulations were not published in final form until July 22, 1992, and had an effective date of January 1, 1993 ("1991 final regulations"). 57 Fed.Reg. 32424 *et seq.* (currently codified at 26 C.F.R. § 48.4081–1 *et seq.*) Because they were not effective until January 1, 1993, the 1991 final regulations provided for transitional rules that would apply to the 1990 Act's amendments during the period from July 1, 1991 through December 31, 1992, the months at issue in this litigation. These rules provided that the owner of the gasoline immediately before the taxable event was liable for the tax. *Id.* They also provided that a terminal operator was secondarily liable for the tax if it permitted an unregistered owner of gasoline to remove the gasoline from its terminal. *Id.*

From July 1, 1991 through March 31, 1992, Tarricone purchased gasoline from a company called ZYZ Enterprises, Inc. ("ZYZ"). ZYZ is a non-registered gasoline distributor that had an "oral agreement" with Tarricone to store gasoline in Tarricone's terminal in Yonkers, New York. During the period in question, ZYZ allegedly removed its gasoline from Tarricone's terminal and sold the gasoline to Tarricone after it was removed. Tarricone then delivered the gasoline for retail resale at its own gas stations.

On September 24, 1996, the Internal Revenue Service ("IRS") assessed $1,348,502.44 against Tarricone in excise taxes for the periods ending 9/30/91, 12/31/91, and 3/31/92. The IRS's assessment was based on the grounds that at the time of the gasoline's removal from its terminal, Tarricone, not ZYZ, owned the gasoline. On or about January 28, 1997, Tarricone paid the IRS $58,331 and filed an administrative claim for a refund. The IRS denied the refund request on February 6, 1997. Tarricone does not dispute the amount of tax at issue if the IRS's position is upheld.

On April 29, 1997, Tarricone filed this refund and abatement action, denying that it owes the taxes assessed. Tarricone's main contention is that the applicable regulations have an unconstitutionally retroactive effect. The United States has moved pursuant to Fed.R.Civ.P. 12(c) to dismiss the complaint, contending that the effect of the regulations, though retroactive, is not unconstitutional, and that, even if Tarricone did not own the gasoline at the time it was removed from its terminal, Tarricone is liable for payment of the taxes as the "terminal operator" as a consequence of its concessions in the complaint that it allowed the removal of the gasoline by ZYZ, a non-registered gasoline distributor. *See* 26 C.F.R. § 48.4081–9(c)(2).

## DISCUSSION

A motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) is analyzed under the same standard as a motion under Rule 12(b)(6). *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994) (citing *Ad–Hoc Comm. of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch College,* 835 F.2d 980,

982 (2d Cir.1987)). Under that analysis, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

■ While retroactive application of a statute is disfavored, a federal agency will have the power to promulgate retroactive rules if "that power is conveyed by Congress in express terms." *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). At the time in question, Congress had expressly conveyed that power to the Secretary of the Treasury:

> The Secretary may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect.

26 U.S.C. § 7805(b) (West 1989).[2] Section 7805(b) thus creates a presumption that tax regulations apply retroactively, and the extent, if any, to which the regulations will *not* apply retroactively is left to the discretion of the Secretary of the Treasury. *See, e.g., Automobile Club v. Comm'r*, 353 U.S. 180, 184, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957) (construing identical language of § 3791(b) of the 1939 Tax Code, § 7805(b)'s predecessor); *LeCroy Research Sys. Corp. v. Comm'r*, 751 F.2d 123, 126 (2d Cir.1984). The Secretary will be found to have abused his discretion only if "the retroactive regulation alters settled prior law or policy upon which the taxpayer justifiedly relied and if the change causes the taxpayer to suffer inordinate harm." *CWT Farms, Inc. v. Comm'r*, 755 F.2d 790, 802 (11th Cir.1985).

Before enactment of the 1991 final regulations, the law with respect to liability for excise taxes under the circumstances in question was, at best, unsettled. As discussed above, the statute then in effect imposed a tax "on the earlier of—(A) the removal, or (B) the sale, of gasoline by the refiner or importer thereof or the terminal operator," but did not specify who would bear ultimate liability for the tax. 26 U.S.C. § 4081(a) (West 1989).

The 1990 Act similarly provided for the imposition of a tax on "(i) the removal of a taxable fuel from any refinery, (ii) the removal of a taxable fuel from any terminal, (iii) the entry into the United States of any taxable fuel for consumption, use, or warehousing, and (iv) the sale of a taxable fuel to any person who is not registered," 26 U.S.C. § 4081(a), and did not specify who would pay the tax.

■ The language of the 1986 Act and the 1990 Act, however, while non-specific, did not rule out the possibility that Tarricone, the registered terminal operator, could be liable for payment of the tax; rather, the statute merely provided for the points at which the gasoline would be taxed. Under both versions of § 4081(a), Tarricone knew that either he or ZYZ could be liable for payment of the tax. The failure of the section to spell out precisely who bore that responsibility does not relieve Tarricone of his present liability for the tax. In light of the express language of § 4081(a), Tarricone cannot plausibly contend that the retroactive application of the new regulations altered settled law and expectations; to the contrary, it was always possible that Tarricone would be liable for the taxes at issue here. *See, e.g., Anderson, Clayton & Co. v. United States*, 562 F.2d 972, 983–84 (5th Cir.1977) ("The best that taxpayer can claim is that the law or policy was unsettled during this period. Under the circumstances, that is not enough to preclude our according [the regulation] retroactive application"). Tarricone cannot show either an abuse of discretion or that it is arbitrary and capricious to retroactively hold him liable for the tax.

■ Further, even if the law *were* well-settled prior to March 31, 1992 that terminal operators were not liable for the excise tax,

---

**2.** This statute has since been amended to restrict the Secretary's power to apply regulations retroactively. *See* 26 U.S.C. § 7805(b) (West 1989 and Supp.1997). The amendment, however, is effective only with respect to regulations that relate to statutory provisions enacted on or after July 30, 1996, and does not apply here. *See* Taxpayer Bill of Rights II, Pub.L. No. 104–168, § 1101(b), 110 Stat. 1468 (1996).

retroactive application of a terminal-operator liability rule from July 22, 1992 (the publication date of the 1991 final regulations) to July 1, 1991 is still allowable. As the government notes, courts have upheld the retroactive application of tax regulations for periods of retroactivity longer than the period at issue here. *See, e.g., Tate & Lyle, Inc. v. Comm'r,* 87 F.3d 99, 108 (3d Cir.1996) (upholding nine-year period of retroactive application); *E.I. du Pont de Nemours & Co. v. Comm'r,* 41 F.3d 130, 133, 140 (3d Cir.1994) (upholding fifteen-year period of retroactive application); *Rutter v. Comm'r,* 760 F.2d 466, 468–69 (2d Cir.1985) (upholding five-year period of retroactive application).

■ Tarricone also argues that imposition of a retroactive tax like the one at issue here violates taxpayers' due process rights as a form of "secret taxing," and that he had settled expectations that he would not be liable for the excise tax. However, the Supreme Court has held that a taxpayer has no vested right in the Internal Revenue Code; thus, any reliance by Tarricone on the prior state of the law does not give rise to a violation of due process. *See, e.g., United States v. Carlton,* 512 U.S. 26, 33, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994) ("Tax legislation is not a promise, and a taxpayer has no vested right in the Internal Revenue Code"):

Taxation is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract. It is but a way of apportioning the cost of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens. Since no citizen enjoys immunity from that burden, its retroactive imposition does not necessarily infringe due process.

*Id.* (quoting *Welch v. Henry,* 305 U.S. 134, 146–47, 59 S.Ct. 121, 83 L.Ed. 87 (1938)).

■ Tarricone further argues that the government is incorrect in contending that a proposed regulation provides "notice" to the taxpayer. Even if Tarricone is correct, however, this does not render the retroactive application of the regulations unconstitutional. Further, given the presumption of the retroactivity of new regulations during the years in question, the IRS was not required

to issue a temporary regulation rather than relying upon the retroactive effect of a Treasury regulation. Finally, Tarricone contends that the IRS violated the notice and comment provisions of the Administrative Procedure Act, 5 U.S.C. § 553, by not giving the public thirty days to comment on § 48.4081–9(c)(2) before it was promulgated in final form on July 22, 1992. The public, however, had ample opportunity to comment on this rule when it was first promulgated in proposed form as part of the 1987 Proposed Regulations.

For all of these reasons, Tarricone is liable for payment of the excise tax.

### CONCLUSION

For the foregoing reasons, defendant's motion for judgment on the pleadings is granted. The defendant shall settle a judgment in fourteen days on five days' notice.

**SO ORDERED.**