COLLOTON, Circuit Judge,
concurring in the judgment.
This case involves a dispute over a provision of the ICC Termination Act of 1995 that governs the loading and unloading of property transported in interstate commerce. See 49 U.S.C. § 14103. As the case comes to us, the district court assumed for the sake of analysis that Supervalu, Inc., required that owner-operators of motor vehicles who delivered goods to Supervalu’s distribution centers be assisted by so-called “lumpers” in the unloading of their vehicles. The court nonetheless rejected the claims of the Owner-Operator Independent Drivers Association, Inc. (“OOIDA”) that its owner-operators were entitled to compensation from Supervalu for the costs of that assistance. To prevail on this appeal, OOIDA must establish both that Supervalu would be responsible for compensating owner-operators for the costs of lumpers required by Supervalu, and that OOIDA may be entitled to monetary relief. In my view, the governing statute provides that if a receiver requires owner-operators to use the assistance of lumpers, then that receiver is required to compensate the owner-operators for the costs of the assistance. The statute, however, does not authorize an award of monetary relief in a private civil action. On that basis, I concur in the judgment affirming the dismissal of OOIDA’s claim.
I.
The statute at issue provides:
Whenever a shipper or receiver of property requires that any person who owns or operates a motor vehicle transporting property in interstate commerce ... be assisted in the loading or unloading of such vehicle, the shipper or receiver shall be responsible for providing such assistance or shall compensate the owner or operator for all costs associated with securing and compensating the person or persons providing such assistance.
49 U.S.C. § 14103(a).
Here, the district court assumed that a shipper or receiver — in this case, a receiver, Supervalu — required that owner-operators be assisted in the unloading of their vehicles. In that event, the statute requires that “the shipper or receiver shall be responsible” for compensating the owner-operator.
The text and structure of the statute lead to the conclusion that where a receiver requires the use of lumpers, that same receiver is responsible for compensating the owner-operator for the associated costs. The statute uses the definite article — '“the shipper or receiver” — when identifying the party responsible for compensating the owner-operators in the second clause. This means that the second clause refers to someone specific. See Flandreau Santee Sioux Tribe v. United States, 197 F.3d 949, 952 (8th Cir.1999). It also raises an inference that the definite article refers back to a specific party previously identified — -in this instance, whoever imposed the requirement to use lumpers under the first clause. See United States v. Wilcox, *868 487 F.3d 1163, 1176 (8th Cir.2007); Yamaha Corp. v. ESS Tech., Inc., No. 95-1362, 1996 WL 146499, at *3 (Fed.Cir. March 29, 1996); Nat’l Foods, Inc. v. Rubin, 936 F.2d 656, 660 (2d Cir.1991). The term “or” in the second clause is necessary to allow the court to identify the responsible party, depending on which party imposed the requirement under the first clause. But the reference to “the shipper or receiver” in the second clause does not mean that the responsible party is indeterminate. Where a receiver has required the use of lumpers under the first clause, the more natural reading is that the definite article in the second clause refers to that specific receiver, not to a shipper, because no specific shipper has been identified by the preceding text.
A contrary interpretation would frustrate the statutory design. Section 14704(a)(1) provides that a person may bring a civil action for injunctive relief for violations of § 14103; in addition, § 14905 authorizes civil penalties of up to $10,000 against any person who knowingly violates § 14103(a). To give these provisions effect, § 14103(a) must designate a responsible party. If the statute means that either a shipper or a receiver is responsible for compensating an owner-operator, but never specifies which of the two is responsible, then it would be impractical for a court to award injunctive relief or to impose civil penalties.
The legislative history described by the court’s opinion does not dictate a different conclusion. The 1980 Report of the House Committee on Public Works and Transportation, H.R.Rep. No. 96-10691980 U.S.C.C.A.N. 2283 (1980), is a tenuous basis for concluding that § 14103(a) fixes no responsibility for compensating an owner-operator. In addition to the usual concerns about the weight to be given legislative history, the specific bill that was discussed in the 1980 committee report did not become law, as it was substantially redrafted and amended on the floor of the House. See 126 Cong. Rec. 15,641-44 (1980) (setting forth amendments offered by Rep. Howard). The 1980 House report, moreover, commented on proceedings that led to a former statute, the Motor Carrier Act of 1980, Pub.L. No. 96-296, 94 Stat. 793. Although Congress reenacted the relevant provision without significant change in 1995, see ICC Termination Act of 1995, Pub.L. No. 104-88, § 103, 109 Stat. 803, 891, there was no settled judicial interpretation of the provision that became § 14103(a), cf. Bragdon v. Abbott, 524 U.S. 624, 645, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998), and no reason to assume that Members of Congress in 1995 acted based on a passage in a House committee report from 1980.
In any event, even assuming the 1980 House report regarding proposed legislation should inform our interpretation of the 1995 statute, the report does not contradict the better reading of § 14103(a). As reported by the 1980 House committee, the bill did assign responsibility to a receiver of property to pay persons to unload such property, unless a tariff or written contract provided otherwise. See 126 Cong. Rec. 15,600 (1980) (setting forth proposed 49 U.S.C. § 11109(a)).[6] Therefore, *869 the committee report’s statement that the apportionment of responsibility for loading or unloading “is a market decision to be determined by the parties to the transaction,” H.R.Rep. No. 96-1069, at 31, 1980 U.S.C.C.A.N. 2283, 2313, contemplated a statutory assignment of responsibility in the absence of tariff or contract. The floor statement of Representative Howard, 126 Cong. Rec. 15,643 (1980), that the committee intended to “identify any compensation that the owner-operator is to receive” for loading or unloading is consistent with this framework. Under § 14103(a) as enacted in 1995, the parties likewise can apportion responsibility through tariff or contract, although such market activity must occur against the backdrop of a statute that otherwise fixes responsibility for compensating the owner-operator on the party requiring the use of lumpers.
For these reasons, if a receiver requires an owner-operator to be assisted in unloading a motor vehicle, then the receiver is responsible for providing such assistance or compensating the owner-operator. The district court’s contrary conclusion should not be adopted.
II.
The district court’s judgment nonetheless may be affirmed on an alternative ground. In the settlement agreement between the parties, the owner-operators reserved their right to appeal the dismissal of their claim for restitution under § 14103(a), but not their claims for declaratory or injunctive relief under § 14103(a) or any of their claims under § 14103(b). Thus, the only remaining claim of the owner-operators seeks restitution from Supervalu for the costs associated with using lumpers to unload goods. The district court concluded that restitution is not an available remedy under the governing statutes. If that conclusion is correct, then dismissal of the remaining claim was appropriate.
The provision that sets forth remedies available in a private action alleging violations of § 14103(a) is 49 U.S.C. § 14704. Section 14704(a)(1) provides for relief in a private civil action: “A person may bring a civil action for injunctive relief for violations of sections 14102 and 14103.” Section 14704(a)(2) provides for damages in private actions, see OOIDA, Inc. v. New Prime, 192 F.3d 778, 785 (8th Cir.1999), but only for violations by a “carrier or broker providing transportation or service,” not by a shipper or receiver. See 49 U.S.C. § 13102 (defining “carrier” and “broker”). Another provision, 49 U.S.C. § 14905(a), allows for a civil penalty of up to $10,000 per violation of § 14103, payable to the United States.
The owner-operators contend that § 14704(a)(1), though it refers only to “injunctive relief,” authorizes a district court to grant all forms of equitable relief, including restitution and disgorgement. They cite the Supreme Court’s statement in Mitchell v. Robert De Mario Jewelry, Inc., 361 U.S. 288, 291, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960), and Porter v. Warner Holding Co., 328 U.S. 395, 398, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946), that “[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court’s jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.” Porter held that a *870 statute providing for injunctive relief “or other order” authorized a court to order restitution. 328 U.S. at 399, 66 S.Ct. 1086. Mitchell went further, holding that a statute granting district courts jurisdiction “to restrain violations of section 15” of the Fair Labor Standards Act authorized a district court, in an action brought by the Secretary of Labor, to award reimbursement for wages that were lost due to unlawful discharge or discrimination. 361 U.S. at 289, 296, 80 S.Ct. 332. According to Mitchell, the “affirmative confirmation of the power to order reimbursement” that appeared in Porter — through the statute’s reference to “a permanent or temporary injunction, restraining order, or other order” — was unnecessary to establish “the full scope” of the district court’s equity jurisdiction. Id. at 291, 80 S.Ct. 332 (internal quotation omitted); see Porter, 328 U.S. at 399, 66 S.Ct. 1086.
More recently, however, the Court has emphasized that where Congress expressly designates a particular remedy, “a court must be chary of reading others into it.” Meghrig v. KFC W., Inc., 516 U.S. 479, 488, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996) (internal quotation omitted). This is especially so when Congress “has provided ‘elaborate enforcement provisions’ for remedying the violation of a federal statute.” Id. at 487-88, 116 S.Ct. 1251 (quoting Middlesex Cnty. Sewerage Auth. v. Nat’l Sea Clammers Ass’n, 453 U.S. 1, 14, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981)).
In the context of interstate transportation of property by motor vehicle carrier, Congress permitted civil monetary penalties for violations of § 14103 in an action brought by the United States; it provided for damages in a private action brought against a “carrier or broker”; but it authorized only “injunctive relief’ in a private action against a shipper or receiver premised on a violation of § 14103. “Injunctive relief’ is a distinct type of equitable relief that does not encompass restitution or disgorgement. See Mertens v. Hewitt Assocs., 508 U.S. 248, 256, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). Whether to infer the availability of all forms of equitable relief based on the authorization of one form depends on the statutory scheme.
The better view here is that restitution and disgorgement are not available forms of relief in an action against a receiver for a violation of § 14103. Congress established a detailed remedial scheme in Chapters 147 and 149 of Title 49. While the statute provides for monetary relief in other contexts, it does not designate such a remedy in a private action for a violation of § 14103. Unlike this case and Meghrig, the Supreme Court’s decisions in Porter and Mitchell both involved public enforcement actions, and the Court explained that a court’s equitable powers “assume an even broader and more flexible character” in that context “than when only a private controversy is at stake.” Porter, 328 U.S. at 398, 66 S.Ct. 1086; see also United States v. Lane Labs-USA Inc., 427 F.3d 219, 231 (3d Cir.2005); FTC v. Sec. Rare Coin & Bullion Corp., 931 F.2d 1312, 1314 (8th Cir.1991). In light of the Supreme Court’s most recent direction to be cautious in private actions about supplementing the remedies that are expressly authorized by Congress, the prudent conclusion is that monetary remedies are impliedly excluded in a private action under § 14704(a)(1) based on an alleged violation of § 14103. Consistent with the Ninth and Eleventh Circuits, therefore, I agree with the district court that the owner-operators are not entitled to restitution. See OOIDA, Inc. v. Swift Transp. Co., 632 F.3d 1111, 1121 (9th Cir.2011); OOIDA Inc. v. Landstar Sys., Inc., 622 F.3d 1307, 1323-24 (11th Cir.2010).
*871 For these reasons, I concur in the judgment affirming the district court’s dismissal of the owner-operators’ claim for restitution under 49 U.S.C. §§ 14103(a) and 14704(a)(1).

. The proposed text reads as follows:
(1) A person shipping property which is transported by motor vehicle for compensation in interstate commerce ... shall load such property onto such vehicle or shall employ or pay one or more persons ... to load such property onto such vehicle, unless a tariff relating to such transportation of, or a written contract relating to such transportation entered into by, the person providing such transportation provides otherwise.
(2) A person receiving property which is transported by motor vehicle for compensa *869 tion in interstate commerce ... shall unload such property from such vehicle or shall employ or pay one or more persons ... to unload such property from such vehicle, unless a tariff relating to such transportation of, or a written contract relating to such transportation of, or a written contract relating to such transportation entered into by, the person providing such transportation provides otherwise.