# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-4389

_____

| | | |
|---|---|---|
| HealthEast Bethesda Lutheran Hospital and Rehabilitation Center, A Minnesota Nonprofit Corporation, | * * * * | |
| Appellee, | * * | |
| v. | * * * | Appeal from the United States District Court for the District of Minnesota. |
| Donna E. Shalala, Secretary of Health and Human Services, | * * * | |
| Appellant. | * | |

_____

Submitted:  November 18, 1998

Filed:  December 23, 1998

_____

Before BEAM, MAGILL, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

The Medicare program reimburses hospitals for interest payments on "necessary" loans to the extent that such payments exceed income on the hospitals' investments. See 42 C.F.R. § 413.153(a)(1).  When deciding how much to reimburse a hospital for a particular year, therefore, the Department of Health and Human Services must determine whether a loan is necessary and what the hospital's investment income is. Each year, hospitals submit cost reports to "fiscal intermediaries," who are under

contract with the Department of Health and Human Services and who determine how much to reimburse the hospitals and issue written Notices of Program Reimbursement (NPRs). See 42 U.S.C. § 1395h; see also 42 C.F.R. § 405.1803, § 405.1835(c). These determinations are subject to administrative review and may be reopened for up to three years after a relevant NPR is issued. See 42 C.F.R. § 405.1885(a).

HealthEast, a St. Paul, Minnesota, hospital, borrowed money in 1980, 1982, and 1984 and included interest payments on the loans in its annual cost reports. The fiscal intermediary reimbursed HealthEast for the interest payments until it audited HealthEast's cost reports for 1985. The intermediary reported that its audit showed that portions of each of the 1980, 1982, and 1984 loans were unnecessary. It then reopened HealthEast's cost reports for 1984 through 1987 pursuant to the three-year reopening regulation and excluded from reimbursement any payments for interest on the portions of the loans that it had determined were unnecessary.

HealthEast claimed interest payments on these same loans for 1988. The intermediary again found that portions of each of the 1980, 1982, and 1984 loans were unnecessary and excluded from reimbursement the interest payments on those portions. HealthEast appealed to the Provider Reimbursement Review Board (PRRB), which reversed the intermediary's determination and held that the intermediary had violated the three-year limit on reopening by considering in its evaluation for 1988 whether the 1980, 1982, and 1984 loans were necessary.

The intermediary appealed the PRRB's decision to the Secretary of Health and Human Services, who reversed and remanded the case to the PRRB on the ground that there was no reopening because the reimbursement amounts for the interest payments in 1980, 1982, and 1984 were not disturbed. When the PRRB reaffirmed its earlier determination that the intermediary's decision with respect to the interest payments was improper, the Secretary reversed the PRRB again. (In practice, the Administrator of the Health Care Financing Administration acts for the Secretary, see 42 C.F.R.

-2-

§ 405.1877(a), but, for purposes of simplicity in this opinion, and consistent with the terms of the relevant statute, see 42 U.S.C. § 1395oo(f)(1), we consider the decision to be that of the Secretary.)

HealthEast sought judicial review in the district court, claiming that the Secretary had erred in interpreting the reopening regulation, that the loans were necessary in any event, and thus that the relevant interest payments should be reimbursed. HealthEast and the Secretary then filed cross-motions for summary judgment.

The district court ruled for the Secretary with respect to the 1984 loan, finding the portion at issue to be unnecessary and holding that the associated interest payments should not be reimbursed. HealthEast did not appeal this ruling, and we are therefore no longer concerned with the 1984 loan.

With respect to the 1980 and 1982 loans, the Secretary argued that the reopening regulation did not apply, because the regulation limits reopening only with respect to "intermediary determinations," which are defined as the final determinations of the amount a hospital will be reimbursed. See 42 C.F.R. § 405.1801(a)(1); see also 42 C.F.R. § 405.1801(a)(3), § 413.153(a)(1), and 42 U.S.C. § 1395x(v)(1)(A), § 1395oo(a)(1)(A)(ii), § 1395oo(a)(3). Since the amounts of the reimbursements for the 1980 and 1982 interest payments were not disturbed, the Secretary argued, the "intermediary determination" was not improperly reopened. The district court ruled that the Secretary was precluded from relying on the regulatory definition of "intermediary determination" because she did not rely on it in her decision interpreting the reopening provision, and that, in any event, the Secretary's interpretation was contrary to the plain language of the regulation, which prohibited reopening of the intermediary's earlier decisions that the 1980 and 1982 loans were necessary.

The Secretary appeals, and we reverse in part the judgment of the district court and remand the case for further proceedings.

# I.

An agency's interpretation of its own regulation must be given "controlling weight unless it is plainly erroneous or inconsistent with the regulation." Bowles v. Seminole Rock and Sand Co., 325 U.S. 410, 414 (1945); see also Stinson v. United States, 508 U.S. 36, 45 (1993), and Gardebring v. Jenkins, 485 U.S. 415, 430 (1988). HealthEast contends, however, that no such deference is warranted here, because the interpretation of the reopening regulation in question does not require technical expertise. In support of this proposition, HealthEast cites Thomas Jefferson University v. Shalala, 512 U.S. 504, 512 (1994), which states that "broad deference is all the more warranted when, as here, the regulation ... 'require[s] significant expertise and entail[s] the exercise of judgment grounded in policy concerns,' " quoting Pauley v. BethEnergy Mines, Inc., 501 U.S. 680, 697 (1991). Although deference may be "all the more warranted," Thomas Jefferson University, 512 U.S. at 512, in highly technical cases, it does not follow that it is not warranted in other cases where an agency interprets its own regulation. The Secretary's interpretation of the reopening provision is thus entitled to "controlling weight unless it is plainly erroneous," Seminole Rock, 325 U.S. at 414.

The reopening regulation states that a "determination of an intermediary ... may be reopened with respect to findings on matters at issue in such determination ... within 3 years." See 42 C.F.R. § 405.1885(a). HealthEast argues that the phrase "findings on matters at issue" includes all questions involved in the determination, thus subjecting to the three-year limitation a finding that a loan was necessary. HealthEast contends, therefore, and the district court evidently agreed, that an intermediary's decisions as to predicate facts germane to the calculation of the appropriate amount of total reimbursement are "intermediary determinations" that cannot be disturbed after three years. The Secretary maintains, however, that the regulation simply means that a reimbursement determination can be reopened with respect to individual cost items without reconsidering all such items. In our view, the Secretary's proposed interpretation more plausibly parses the regulatory language.

-4-

An "intermediary determination" is defined as "a determination of the amount of total reimbursement due the provider ... for the period covered by the cost report." See 42 C.F.R. § 405.1801(a)(1). It is the "determination" that is subject to the regulation. The language of the regulation therefore specifies, in our view, that the three-year limitation on reopening applies solely to the amount of total reimbursement. The reconsideration of predicate factual issues (such as the necessity of a loan), with no intention of changing the total reimbursement amount applicable to a year, thus does not fall within the definition of an "intermediary determination" and, accordingly, is not subject to the three-year limitation.

It would make no sense to say that an intermediary determination, as the relevant regulation defines that term, could be reopened "with respect to" predicate factual questions that do not alter the total reimbursement amount. If, however, "matters at issue" are understood to be individual cost items, the alteration of which would necessarily change the total reimbursement determination, it would make sense to say that a determination could be reopened "with respect to" them. We therefore hold that the Secretary's interpretation of the reopening regulation is not "plainly erroneous or inconsistent with regulation," Seminole Rock, 325 U.S. at 414. We believe, in fact, that the Secretary's interpretation is the only interpretation logically consistent with the regulatory language.

## II.

The district court ruled, and HealthEast contends on appeal, that the Secretary is precluded from making an argument based on the definition of "intermediary determination" contained in 42 C.F.R. § 405.1801(a)(1) because she did not rely on that regulation in her decision below. In support of this proposition, both HealthEast and the district court cite Mayo v. Schiltgen, 921 F.2d 177, 179 (8th Cir. 1990), which states that "a reviewing court may not uphold an agency decision based on reasons not articulated by the agency itself in its decision."

Mayo and other cases that adhere to this proposition rely principally on Securities and Exchange Commission v. Chenery Corp., 318 U.S. 80 (1943), which involved the review of an administrative decision in which an agency failed to make necessary factual findings. Although the Court did state that "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based," id. at 87, the Court also explicitly limited that ruling to cases in which an agency fails to make a necessary determination of fact or policy. Id. at 88. We have recognized this aspect of Chenery since Mayo was decided. See, e.g., Arkansas AFL-CIO v. Federal Communications Commission, 11 F.3d 1430, 1440 (8th Cir. 1993), (en banc) (plurality opinion, with two additional judges concurring implicitly on this point). The case before us does not involve an alleged failure on the part of the Secretary to make a necessary finding of fact or policy.

Even if the Secretary were precluded from making legal arguments different from those relied on earlier, the Secretary has not done so here. Both of the Secretary's earlier decisions in this case clearly stated that no reopening had occurred because the intermediary did not seek to alter its final determinations for 1980, 1982, or 1984. The district court seems to have been concerned with whether the Secretary cited the regulatory definition of "intermediary determination" in reaching that result, but this is not the relevant inquiry. The reopening regulation applies only to "determinations of intermediaries," and the Secretary reasoned that there was no reopening of such a determination because the total reimbursement amount was not altered. There would have been no change in the substance or logic of the reasoning of the Secretary's earlier decisions if they had specifically noted that a relevant regulation defined "determination of an intermediary" as the final reimbursement decision. In short, the Secretary makes no new argument on appeal; the Secretary simply directs our attention to more particular legal support for the decisions made below.

## III.

Finally, HealthEast argues that the Secretary is collaterally estopped from challenging the necessity of HealthEast's 1980 and 1982 loans by the intermediary's initial decisions to reimburse HealthEast. Collateral estoppel applies, HealthEast asserts, because the Secretary had "an adequate opportunity to litigate," United States v. Utah Construction and Mining Co., 384 U.S. 394, 422 (1966), the necessity of the loans in the three years after the intermediary's initial decisions.

The Supreme Court, in its many cases on this issue, has never ruled that the passage of time triggers collateral estoppel. Instead, it has consistently required "actual and adversarial litigation." Regions Hospital v. Shalala, 118 S. Ct. 909, 918 (1998). The Court in Regions Hospital made it clear that "an intermediary's determination in an [NPR], without a hearing before the PRRB on the reasonableness of the costs," is not sufficient "actual ... litigation" for collateral estoppel to apply. Id. Here, the issue of the necessity of HealthEast's loans was not litigated prior to the litigation before us with respect to 1988. The district court therefore erred in ruling that the Secretary is collaterally estopped from finding the 1980 and 1982 loans unnecessary.

## IV.

For the reasons stated, we reverse in part the judgment of the district court and remand the case for consideration of the necessity for the 1980 and 1982 loans.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.